# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| **Terry Miller and Michael Rose,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| **Nissan North America, Inc,** | ) | |
| | ) | |
| **Defendant.** | ) | |

For this Complaint, the Plaintiffs Terry Miller and Michael Rose, by undersigned counsel, state as follows:

## PRELIMINARY STATEMENT

1. This is an action by the purchasers of vehicles (hereafter the "subject vehicles") manufactured and sold by the Defendant Nissan North America, Inc. Plaintiffs seek damages related to their vehicles' dangerous hesitation, jerking and lack of power due to its faulty transmission and Defendant's failure to honor the terms of its warranty.

2. The Plaintiffs would not have purchased the subject vehicles had they been made aware of the subject vehicles' defective transmission.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to the Magnuson-Moss Federal Act, 15 U.S.C. § 2310(d)(1)(B), in that the Plaintiff claims more than $50,000.00 in damages, exclusive of interest and costs, and under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367.

4. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the Plaintiffs' claims occurred within this District and Defendant is subject to personal jurisdiction in this District.

## PARTIES

5. The Plaintiff Terry Miller ("Mr. Miller") is an adult individual residing in Moscow Mills, Missouri.

6. The Plaintiff Michael Rose ("Mr. Rose") is an adult individual residing in Ballwin, Missouri.

7. Defendant Nissan North America, Inc. (the "Manufacturer"), is a business entity with a principal place of business at 1 Nissan Way, Franklin, Tennessee 37067. The Defendant is in the business of marketing, supplying, and selling motor vehicles accompanied by written warranties to the public at large through a system of authorized dealerships.

## STATEMENT OF FACTS

### A. Terry Miller

8. On or about March 23, 2013, Mr. Miller purchased a new 2013 Nissan Pathfinder, Vehicle Identification Number 5N1AR2MM9DC628495 (hereafter the "Miller Vehicle") from St. Charles Automotive, an authorized dealership of the Defendant.

9. The Miller Vehicle sale was accompanied by the Manufacturer's new vehicle limited warranty.

10. Since the time of purchase to the present, Mr. Miller presented the Miller Vehicle to the Manufacturer's authorized dealership(s) for repair and complained that the

Vehicle exhibited lack of power, hesitated, shuddered, jerked and bucked when driven, including when stopped or when accelerating.

11. The Manufacturer's authorized dealership(s) informed Mr. Miller repeatedly that since the Miller Vehicle did not exhibit such symptoms at the time Mr. Miller complained, no repairs would be undertaken, and had not attempted any repairs other than the manufacturer-mandated transmission recall campaigns.

12. Nevertheless, despite all the complaints, the Miller Vehicle continues to suffer from the same nonconformity.

**B. Michael Rose**

13. On or about March 7, 2013, Mr. Rose purchased a new 2013 Infiniti JX35, Vehicle Identification Number 5N1AL0MMXDC328003 (hereafter the "Rose Vehicle" and together with Miller Vehicle, the "Vehicles") from Plaza Infiniti, an authorized dealership of the Defendant.

14. The Rose Vehicle sale was accompanied by the Manufacturer's new vehicle limited warranty.

15. Since the time of purchase to the present, Mr. Rose presented the Rose Vehicle to the Manufacturer's authorized dealership(s) for repair and complained that the Rose Vehicle hesitated, lacked power, and that its transmission slipped when accelerating.

16. The Manufacturer's authorized dealership(s) informed Mr. Rose repeatedly that since the Rose Vehicle did not exhibit such symptoms at the time Mr. Rose complained, no repairs would be undertaken, and had not attempted any repairs.

17. To date, the Rose Vehicle continues to suffer from the same nonconformity.

### C. **Defendant's Knowledge of a Transmission Defect**

18. The Vehicles' JATCO CVT8HT type transmission contains a defect that causes the Vehicles to unexpectedly shake and hesitate when attempting to accelerate.

19. Such defect (referred to as "belt slip condition") is a result of the CVT8HT type transmission chain drive failure to transfer power properly through the transmission when accelerating and prevents the driver from accelerating as intended.

20. To remedy this defect, Defendant started reprogramming the CVT8HT type transmission's control module ("TCM") in affected vehicles with updated software. Yet, despite its knowledge of the defect, Defendant has not informed the Plaintiffs, prior or post Vehicle sale, that a defect is present in the Vehicles.

21. About two months prior to Plaintiffs' purchase of their Vehicles, Defendant distributed to its authorized dealerships a Technical Service Bulletin ("TSB") No. NTB13-002 titled "VOLUNTARY SERVICE CAMPAIGN / 2013 PATHFINDER TCM REPROGRAM" wherein it provided instructions on reprogramming the TCM to remedy the shaking and hesitation problem.

22. However, this "fix" has not cured the defect as evidenced by release of a subsequent TSB on September 10, 2013, No. NTB13-086, titled "2013 - 2014 ALTIMA V6 SEDAN AND PATHFINDER; JUDDER DURING LIGHT ACCELERATION."

23. Despite Defendant's knowledge that the Vehicles contained a serious safety defect, it concealed it from the Plaintiffs.

24. Defendant's September 10, 2013, TSB acknowledged that the Vehicles may suffer from shaking and hesitation upon acceleration and instructed its dealerships to replace

the transmission if vehicle was built before December of 2012 and prior TCM reprogram has not been performed before the vehicle was driven 1,000 miles.

25. Defendant's September 10, 2013, further instructs the dealerships to perform yet another TCM reprogram in an attempt to resolve the shaking and hesitation problem.

26. Despite the release of multiple TSBs and subsequent TCM reprograms, the Vehicles continue to suffer from the same dangerous hesitation, jerking, and lack of power problem.

### FRAUDULENT CONCEALMENT TOLLING

27. Plaintiffs did not and could not have known that there was a defect with the Vehicles' transmission at the time they purchased the Vehicles or any time thereafter.

28. The Magnusson-Moss Federal Act and Missouri Express and Implied Warranty's four-year statute of limitations, which might otherwise apply to bar some of the Plaintiffs' claims, should be tolled because of Defendant's knowing and active concealment of the fact that the Vehicles' transmissions contain a defect.

29. While Defendant issued TSB's making clear that they were aware that there was a defect with the Vehicles' transmission, Defendant failed to disclose the existence of the defect to Plaintiffs.

30. Moreover, Defendant's authorized dealership informed Plaintiffs that the Vehicles' transmission was performing as designed and no further repairs were warranted, rather than acknowledge it suffered from a known defect.

31. Defendant kept Plaintiffs ignorant of vital information essential to the pursuit of their claims.

32. Defendant knowingly, affirmatively, and actively concealed the Vehicles' defect from the Plaintiffs.

33. Defendant was aware of the defect with the Vehicles.

34. Based upon the foregoing, Defendant is estopped from relying on any statutes of limitations in defense of this action.

### AS FOR THE FIRST CAUSE OF ACTION
### (Breach of Warranty Pursuant to the Magnuson-Moss Federal Act, 15 U.S.C. §2301, *et seq.*)

35. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

36. Each Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3).

37. Defendant is a "supplier and warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

38. Each subject vehicle is a "consumer product" as defined in 15 U.S.C. § 2301(6). 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

39. 15 U.S.C. § 2301(a)(1) requires Defendant, as a warrantor, to remedy any defect, malfunction or nonconformance of the subject vehicles within a reasonable time and without charge to the Plaintiffs.

40. Despite repeated demands, Defendant has failed to remedy the subject vehicles' defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the subject vehicles.

41. As a result of Defendant's breaches of written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiffs have suffered damages.

6

## AS FOR THE SECOND CAUSE OF ACTION
### (Breach of Express Warranties - Mo. Ann. Stat. § 400.2-313)

42. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

43. In connection with the sale of the subject vehicles, Defendant expressly warranted that, among other things:

   a. The subject vehicles were fit for the purposes of safe, reliable and attractive transportation;
   b. The subject vehicles were of good, sound and merchantable quality;
   c. The subject vehicles were free from defective parts and workmanship;
   d. The subject vehicles were so engineered and designed as to function without requiring unreasonable maintenance and repairs;
   e. In the event the subject vehicles were not free from defective parts or workmanship as set forth above, the Defendant would repair or replace same without cost to Plaintiffs; and
   f. That any defects or non-conformities would be cured within a reasonable time.

44. Defendant breached these express warranties in that the subject vehicles are plagued by problems that substantially impair the subject vehicles' use, safety and value to the Plaintiffs.

45. Plaintiffs have given Defendant reasonable opportunities to cure said defects, but Defendant has been unable and/or refused to do so within a reasonable time.

46. As a result of said nonconformities, Plaintiffs cannot reasonably rely on the subject vehicles for the ordinary purpose of safe, comfortable and efficient transportation.

47. As a result of Defendant's breach of express warranties, Plaintiffs have been damaged.

## AS FOR THE THIRD CAUSE OF ACTION
**(Breach of Express Warranties - Mo. Ann. Stat. § 400.2-314)**

48. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein and incorporates them herein by reference.

49. Defendant is a merchant with respect to motor vehicles.

50. The Vehicles were subject to implied warranties of merchantability, as defined in Mo. Ann. Stat. § 400.2-314, running from the Defendant to the Plaintiffs.

51. An implied warranty that the Vehicles were merchantable arose by operation of law as part of the sale of the Vehicles.

52. Defendant breached the implied warranty of merchantability in that the Vehicles were not in merchantable condition when the Plaintiffs purchased them, or at any time thereafter, and the Vehicles are unfit for the ordinary purposes for which such vehicles are used.

53. Plaintiffs notified Defendant of the defects in the Vehicles, which was a reasonable time after Plaintiffs discovered the breach.

54. As a result of Defendant's breaches of the implied warranty of merchantability, Plaintiffs have suffered damages, including but not limited to incidental and consequential damages.

## AS FOR THE FOURTH CAUSE OF ACTION
**(Unlawful and Deceptive Practice – Mo. Ann. Stat. § 407.020)**

55. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

56. The sale of the subject vehicles to the Plaintiffs under the guise that they were free from defects that would substantially impair the use, safety, or value of the subject vehicles represents an unlawful or deceptive trade practice under Mo. Ann. Stat. § 407.020.

57. The Defendant violated Mo. Ann. Stat. § 407.020 in one or more of the following ways:

   a. Making of fraudulent and/or negligent representations, as herein before alleged;

   b. Representing the subject vehicles to be of good, merchantable quality, free of defects, when in fact they were not; and

   c. Failing to reveal material facts including, but not limited to, the nature of the nonconformities and defects complained of herein.

58. The Defendant is in the business of selling private automobiles and therefore the violations are likely to affect the general public, now and in the future.

59. The Defendant violated the law willfully and knowingly.

**DEMAND FOR RELIEF**

WHEREFORE, the Plaintiffs demand judgment against Defendant as follows:

   a. An order approving revocation of acceptance of the subject vehicles;

   b. Money damages, in the form of a refund of the full contract prices, including, trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiffs on the subject contracts;

   c. Equitable relief including, but not limited to, replacement of the subject vehicles with new vehicle, or repair of the defective subject vehicles with an extension of the express warranties and service contracts which are or were applicable to the subject vehicles, in the event that Plaintiffs are not found to be entitled to revocation;

   d. Incidental and consequential damages;

   e. Punitive damages;

   f. Reasonable attorney's fees;

   g. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: Wilton, Connecticut
February 28, 2018

                                                    Respectfully submitted,

By:   /s/ Sergei Lemberg
         Sergei Lemberg, Esq.
         LEMBERG LAW, L.L.C.
         43 Danbury Road
         Wilton, CT 06897
         Telephone: (203) 653-2250
         Facsimile:  (203) 653-3424
         *Attorneys for Plaintiff*